UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ALI ALKAIFI,

                         Plaintiff,

        -against-

THE CITY OF NEW YORK,

and
New York City Police Department employees:  POLICE
OFFICER SAMUEL SMITHU and SEVERAL UNKNOWN
JOHN DOES and/or JANE DOES Nos.1, 2, 3 etc.…(whose
identities are unknown but who are know to be police officers
and employees of the CITY OF NEW YORK),

and
New York City Police Department employees:  Sgt., Baronette,
Sgt./Lt. Singh, Sgt. Sudes, Lt. Kahn Internal Affairs Bureau and
RICHARD ROE and /or JANE ROE Nos.1, 2, 3 etc....(whose
identities are unknown but who are know to be Supervisory
police officers and employees for the CITY OF NEW YORK),

and
New York City Fire Department employee:  FIRE
PREVENTION INSPECTOR ERIC MONK (an employee of
the New York City Fire Department and employee for the CITY
OF NEW YORK),

and
New York City Fire Department employees:  DEPUTY
CHIEF INSPECTOR DAVID FRANCO and/or
JOHN JONES and/or JANE JONES Nos.1, 2, 3 etc.…(whose
identities are unknown but who are know to be supervisory
personnel of the New York City Fire Department and
employees for the CITY OF NEW YORK),

and
All of the above named individual defendants are being sued
both individually and in their official capacities.

                         Defendants.
-------------------------------------------------------------X

**SECOND AMENDED COMPLAINT**
**JURY TRIAL DEMANDED**

**CASE NO.:**

Plaintiff, ALI ALKAIFI, by his attorney Micah A. Kwasnik, Esq., allege the following, upon information and belief, for this Complaint:

## PRELIMINARY STATEMENT

1.     This is a civil rights action in which the plaintiff, Ali Alkaifi, seeks relief for defendants' violation of his rights secured by the Civil Rights Act of 1871, 42 USC Section 1983,1985,1988 and of rights secured by the first, fourth, fifth, and fourteenth amendments to the United States Constitution, and of rights secured under the laws and Article 1, Secs. 6, 8, 11 and 12 of the Constitution of the State of New York.   The plaintiff seeks damages, compensatory and punitive, affirmative and equitable relief, an award of costs, interest and attorney's fees, and such other and further relief as this Court deems equitable and just.

## JURISDICTION

2.     Jurisdiction is invoked pursuant to 28 USC Section 1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of plaintiff's constitutional and civil/statutory rights.

3.      Jurisdiction is also invoked herein pursuant to the first, fourth, fifth, and fourteenth amendments to the United States Constitution and 42 USC Section 1983 and 1985.

4.      The plaintiff requests that this Court exercise supplemental jurisdiction over any state court causes of action that arise from a common nucleus of operative facts that give rise to the federally based causes of action pleaded herein. 28 USC Section 1367.

## JURY TRIAL DEMANDED

5.      Plaintiff demands a trial by jury on each of the causes of action pleaded herein.

2

## VENUE

6.      Venue is proper for the United States District Court for the Eastern District of New York pursuant to 29 USC Section 1391(b).


## PARTIES

7.      Plaintiff Ali Alkaifi is a citizen and a resident of the United State at all times relevant hereto a resident of the County of Kings, City of New York and State of New York.

8.      Defendant New York City is a municipality organized and existing under the laws of the State of New York. At all times relevant hereto, defendant City of New York (City), acting through the New York City Police Department (NYPD) is responsible for the practice, supervision, customs and conduct of all NYPD matters in City of New York, as well as the hiring, screening, training, supervising, controlling and disciplining all NYPD and personnel. In addition, at all relevant times, Defendant City was responsible for enforcing the rules and regulations of the NYPD and for ensuring that the NYPD obey the laws of the United State and of the State of New York.

9.      Defendant New York City is a municipality organized and existing under the laws of the State of New York. At all times relevant hereto, defendant City, acting through the New York City Fire Department (FDNY) is responsible for the practice, supervision, customs and conduct of all FDNY matters in City of New York, as well as the hiring, screening, training, supervising, controlling and disciplining all FDNY personnel. In addition, at all relevant times, Defendant City was responsible for enforcing the rules and regulations of the FDNY and for ensuring that the FDNY personnel obeyed the laws of the United State and of the State of New York.

10.     Defendant Fire Prevention Inspector Eric Monk was at all times relevant herein was an inspector, employee and agent of the FDNY.  Monk is named is his personal and official capacity.

11.     Fire Prevention Inspector Eric Monk was, at all times material and relevant to this complaint, a duly appointed and acted as a peace officer of the City of New York, NYS CPL. Sec. 2.10

12.     At all times relevant hereto defendant Fire Prevention Inspector Eric Monk was acting under color of state law and within the scope of his employment. He is being sued individually and in his official capacities.

13.     Defendant FDNY Dep. Chief Inspector David Franco, at all times relevant herein, was an officer, employee, and agent of the NYPD.  Franco is named in his personal and official capacities

14.     Defendant NYPD Police Officer Smithu, at all times relevant herein, was an officer, employee, and agent of the NYPD.  Smithu is named in his personal and official capacities.

15.     Defendant NYPD Sgt. Baronette, at all times relevant herein, was an officer, employee, and agent of the NYPD.  Baronette is named in his personal and official capacities.

16.     Defendant NYPD Sgt./Lt. Singh, at all times relevant herein, was an officer, employee, and agent of the NYPD.  Singh is named in his personal and official capacities.

17.     Defendant NYPD Sgt. Sudes, at all times relevant herein, was an officer, employee, and agent of the NYPD.  Sudes is named in his personal and official capacities.

18.     Defendant NYPD Lt. Kahn, Internal Affairs Bureau, at all times relevant herein, was an officer, employee, and agent of the NYPD.  Kahn is named in their personal and official capacities.

19.     Defendant NYPD Police Officers John and Jane Does, at all times relevant herein, were officers, employees, and agents of the NYPD.  John and Jane Does are named in their personal and official capacities.

20.    Defendant NYPD Supervisory Police Officers Richard Roes and Jane Roes, at all times relevant herein, were supervisory officers, employees, and agents of the NYPD.  Richard and Jane Roes are named in their personal and official capacities.

21.    Defendant FDNY Supervisory Personnel John and Jane Jones at all times relevant herein, were supervisory officers, employees, and agents of the FDNY. John and Jane Jones are named in their personal and official capacities.

22.    At all times relevant herein, all individual defendants were acting under color of state law and within the scope of their authority and employment.

23.    Defendants, Jones(s), Doe(s) and Roe(s), are sued under fictitious names for the reason that their true names and identities are presently unknown to plaintiff except that they are connected in some manner with the defendant City as agents, servants, employees, representatives and/or were in some manner engaged in the activities alleged herein and/or were in some manner responsible for the injuries or damages to plaintiff, which activities were a proximate cause of said injuries or damages to plaintiff. At such times as their true names and identifies becomes known, plaintiff will amend the complaint accordingly.


**ADMINISTRATIVE PROCEEDINGS AND TIMELINESS**

24.    On or about July 16, 2013 Plaintiff Ali Alkaifi, in furtherance of his cause of action, filed a timely Notice of Claim against the City in compliance with General Municipal Law § 50.

25.    More than thirty (30) days have elapsed since service of said notice and the City has failed to pay and/or adjust the claim.

26.    A 50-h examination was had on October 31, 2013.

27.     The original action was commenced within one year and ninety days after the happening of the events that took place on or about July 8th, 2013 from which these claims arise, and within the three-year statute of limitations applicable to federal civil rights actions brought pursuant to 42 U.S.C. Secs. 1983 & 1985.

28.     Previous Complaints were filed with the Court on April 29, 2014 and Nov. 30, 2015.


## FACTS

29.     The conduct and actions of the Defendant Eric Monk, acting in the scope of his employment and under color of law, constituted the use of excessive force.  Defendant Monk's actions were done intentionally, maliciously and/or with a reckless disregard for the natural and probable consequence of his acts.  Monk's acts were without lawful justification, and were designed to and did cause specific and serious bodily harm, pain and suffering in violation of plaintiff's constitutional rights as guaranteed under 42 USC Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

30.     On July 8th of 2013 Fire Prevention Inspector Eric Monk was assigned to the FDNY "RANGE-Hood" inspection unit.

31.     At roughly 9:04 AM on July 8th of 2013, Fire Prevention Inspector Eric Monk entered the convenience mart located at 292 Nostrand Avenue, County of Kings, and State of New York.

32.     When Defendant Monk entered 292 Nostrand Ave. he wearing the uniform of a New York City Fire Department Fire Inspector.

33.     Upon entry Defendant Monk approached Plaintiff and displayed his badge and other visible identification.

34.     Defendant Monk informed Plaintiff that he was in the premises to conduct an inspection of the fire suppression system pursuant to his employment.

35.     Plaintiff accepted and yielded Defendant Monk's show of authority.

36.     Plaintiff Alkaifi having submitted to Defendant Monk's show of authority, allowed him into the restricted area behind the counter.

37.      Defendant Monk went behind the counter; an area not open to the public, where the cash register and a grill used to prepare foods was located.

38.     At 9:06 AM, while behind the counter Defendant Monk approached Plaintiff and spoke with Plaintiff about the inspection.

39.     Defendant Monk conducted an inspection; Defendant examined equipment (grill, vent-hood, fire system), examined paper-work (certificates and business records), and documented his findings.

40.     Defendant Monk during the course of his inspection walked all around and up and down the non-public area of the premises.  The non-public area is behind the counter and refrigerated deli case from the grill to the cash register, a distance of roughly 18 feet and a width of roughly 5 feet and a 3 feet wide walk-able path.

41.     Plaintiff Alkaifi was the store employee manning the cash register.

42.     Ali Doe was the store employee manning the grill.

43.     At 9:17 AM Ali Doe asked Plaintiff Alkaifi to ask Defendant Monk if he could step away from the grill and deli case so Ali Doe could continue work.

44.     Upon hearing the request from Ali Doe, Plaintiff asked Defendant Monk if he could step aside so Ali Doe could work.  Plaintiff, as he spoke to Defendant Monk, made the universal hand gesture of step to the side.

45.     Defendant Monk yelled at Plaintiff to provide him with identification.

46.     Defendant Monk quickly approached Plaintiff.

47.     Plaintiff Alkaifi, who had been sitting down in the far corner, stood up, secured his

workspace, closing the cash register, and faced Defendant.

48.     Defendant Monk again demanded Plaintiff Alkaifi's identification.  Plaintiff informed

Defendant Monk that he did not have identification on him.  Plaintiff further informed Monk the

owner of the business would be at 292 Nostrand Ave. at noon.  Plaintiff further informed Defendant

Monk that Monk already possessed all the business licenses and corporate identifiers for 292

Nostrand Avenue.

49.     Defendant Monk then called 911 in order to secure NYPD assistance so he could issue a

summons for a fire violation to Plaintiff Alkaifi.

50.     While Defendant Monk was on the phone, Plaintiff turned and walked away from Defendant

Monk.

51.     Defendant Monk, while on the phone, walked toward Plaintiff and stood in front of the cash

register.

52.     Plaintiff asked Defendant Monk to please move away from the cash register.

53.     Defendant Monk had his phone in his right hand, at his ear and his elbow raised.

54.     Defendant Fire Prevention Inspector Eric Monk having raised his right elbow, mid chest

level, extended it forward, and walked directly into plaintiff.  Defendant Monk intentionally

executed a "forward elbow strike" by landing his right elbow into Plaintiff Alkaifi's face.

55.     The force of the blow caused severe pain, distress and anguish to the area of plaintiffs face

and eyes.

56.     Plaintiff instinctively raised his hands in a defensive position.

8

57.    Defendant Fire Prevention Inspector Eric Monk, not being in any danger of violence and without issuing any warning, then battered plaintiff with his fists, striking plaintiff's face, body and physically seizing plaintiff and causing Plaintiff to suffer severe pain and anguish.

58.    Defendant Monk placed the Plaintiff in a forward chokehold, lifted the Plaintiff off the ground by his neck.

59.    Monk forced Plaintiff to the ground and Defendant Monk kicked him in the chest and head.

60.    Then Defendant Monk chased plaintiff out of the store and the continued his attack on the sidewalk outside of 292 Nostrand Avenue.

61.    During the course of the attack Defendant Monk repeatedly referred to plaintiff Alkaifi as a "NIGGER".

62.    Plaintiff suffered a fracture to the left Sphenoid Bone, periorbital contusions to the left eye, abrasions to face, lump to left temporal area, edema to right eye, and a diminution of vision.

63.    In response to a "FOIL REQUEST" the New YORK CITY FIRE DEPARTMENT stated that they "are not aware of Fire Prevention Inspector Monk having attended any training relating to workplace violence."

64.    An NYPD vehicle patrol arrived at the scene and intervened.

65.    An ambulance operated by New York Presbyterian Emergency Medical Service, Unit 48EZ, Crew Members bearing ID Nos. 7617 & 6580 (Ambulance #1) arrived at the scene and Plaintiff was placed inside.  Plaintiff informed ambulance crewmembers that Defendant Monk had assaulted him.

66.    Plaintiff was subsequently removed from the ambulance and confronted by two Supervisory NYPD officers, identified by their white shirts, hereinafter referred to as Defendants Richard Roe(s) and/or Jane Roe(s), two supervisory NYPD officers.

67.     Plaintiff Alfaifi told the Defendants Richard Roe(s) and/or Jane Roe(s), two supervisory NYPD officers, that he had been assaulted by defendant Monk and wanted to file a complaint.

68.     Defendants Richard Roe(s) and/or Jane Roe(s), two supervisory NYPD officers, stated to Plaintiff Alkaifi that they had viewed the surveillance video of the assault (VIDEO MADE AVAILABLE & FILED with the COURT).

69.     Defendants Richard Roe(s) and/or Jane Roe(s), two supervisory NYPD officers, refused to recognize Plaintiff's demand to file a criminal complaint against Defendant.

70.     Defendants, Smithu, Singh, Richard Roe(s) and/or Jane Roe(s), two supervisory NYPD officers, in response to Plaintiff's demand to file a criminal complaint repeatedly told Plaintiff to "relax" and informed him that "everything will be okay" and took no further action as to Plaintiff's request.

71.     Despite the fact that Plaintiff was visibly injured, was found unconscious and was receiving medical assistance, not a single Defendant at any time requested information from Plaintiff as to the event(s) that brought them to 292 Nostrand Avenue.

72.     Defendants Richard Roe(s) and or Jane Roe(s), Supervisory NYPD Officers, Smithu, Baronette, Singh, Sudes, Lt. Kahn, NYPD Internal Affairs Bureau conferred with Defendant Fire Prevention Inspector Eric Monk.

73.     The New York City Police Department Patrol Guide, Section 110-56 requires notification to the FDNY when any employee of the fire department is arrested.

74.     Defendants Richard Roe(s) and or Jane Roe(s), Supervisory NYPD Officers communicated with Defendants John Jones(s) and/or Jane Jones(s), supervisors at the New York City Fire Department.

75.     An ambulance operated by SeniorCare Emergency Medical Services, Unit 31E2, Crew Member ID Nos. 6206 & 6419 (Ambulance #2) arrived at the scene.

76.     Defendant Fire Prevention Inspector Eric Monk, Defendants Richard Roe(s) and or Jane Roe(s), Supervisory NYPD Officers, and Defendants Smithu, Baronette, Singh, Sudes, Lt. Kahn, Internal Affairs Bureau did confer with the personnel operating Ambulance #1 and the personnel operating Ambulance #2 and did agree to cover up the assault of Plaintiff by Defendant Monk.

77.     The Brooklyn Hospital medical record does not contain a legally required "PREHOSPITAL CARE REPORT", which should contain identifying data as to the ambulance(s), the personnel manning the ambulance, location of the pickup, patient history, injury narrative and patient statements.

78.     The Brooklyn Hospital Medical Record Room personnel stated that the legally required "PREHOSPITAL CARE REPORT" is not part of plaintiff's medical record.

79.     Ambulance #1 never filed the "PREHOSPITAL CARE REPORT" with the Brooklyn Hospital.

80.     Ambulance #2 never filed the "PREHOSPITAL CARE REPORT" with Brooklyn Hospital.

81.     Plaintiff Alkaifi was placed back in a different ambulance (Ambulance #2) and taken to Brooklyn Hospital where he was treated for injuries including a left Sphenoid Bone fracture, periorbital contusions to the left eye, abrasions to face, lump to left temporal area, and edema to right eye. Plaintiff informed Ambulance #2 crewmembers that Defendant Monk had assaulted him.

82.     Both Ambulance #1 and Ambulance #2 were operated by private entities (non-governmental).

11

83.    When Plaintiff left 292 Nostrand Avenue by ambulance he was not under arrest: Plaintiff was not handcuffed, he was not informed he was under arrest, nor was there a Police Officer in the ambulance, in sum, his liberty was not curtailed.

84.    After leaving 292 Nostrand Avenue, Defendants Smithu, Baronette, Singh, Sudes, Monk, Lt. Kahn, Internal Affairs Bureau, Deputy Chief Inspector David Franco of the FDNY, Roes and Does did gather and meet at the 79th Precinct.

85.     The purpose of this meeting was to devise a common story, inconsistent with the truth, which would shield Defendant Monk from civil and criminal liability, about what had happened at 292 Nostrand Ave., regarding the assault perpetrated by Defendant Monk upon the Plaintiff.

86.    The NYPD "AIDED CARD" which must be filed by NYPD when they assist injured civilians, such as plaintiff, has never been filed.

87.    Hours after the attack, while plaintiff was being treated at Brooklyn Hospital, Defendant PO Samuel Smithu appeared and arrested plaintiff, without a warrant, placing him in handcuffs.

88.    The NYPD "Omniform System" Arrest Report lists Plaintiff's physical condition as "apparently normal."

89.    Defendant PO Samuel Smithu told Plaintiff that he had been ordered by his supervisors to arrest Plaintiff.

90.    Plaintiff Alkaifi was charged with Obstructing Governmental Administration, PL195.05; Menacing, PL120.15; Harassment, PL 240.26 (1), Docket No. 2013KN051939.

91.    The charges were based on maliciously and falsely lodged complaints by one or more of the individual Defendants, including without limitation, Fire Prevention Inspector Eric Monk; for which there was no probable cause and lacking in any legal justification with respect to Plaintiff.

92.    Defendant Sgt. Sudes, Lt/Sgt. Singh, and Sgt. Baronette approved the filing of the complaint against plaintiff knowing that all the facts constituting probable cause were false.

93.    On July 9, 2013 after spending a night in jail, Plaintiff was arraigned and released on his own recognizance.

94.    At Plaintiff's Criminal Court arraignment the People's Disclosure, Crim. Proc. Law Sec. 710.30, does not include any mention of Plaintiff's repeated statements to NYPD that Defendant Monk assaulted him and his repeated requests to have Defendant Monk arrested.

95.    Crim. Proc. Law Sec. 710.30 disclosure does include false statements and misleading statements attributed to Plaintiff.

96.    No Defendant made and retained a copy of the video of the incident, despite having come to the store and watched video.

97.    No Defendant provided copy of the video to the Kings County District Attorney's Office.

98.    An "Order of Protection" was issued against victim Alkaifi in favor of the aggressor Fire Prevention Officer Eric Monk

99.    On July 22, 2013, the Kings County District Attorneys Office was given a copy of the surveillance video of the assault by the Plaintiff.

100.   On July 25, 2013 Defendant Monk executed and caused to be filed in NYC Criminal Court, a Supporting Deposition, which is signed subject to penalty of criminal perjury.

101.   Defendant Monk did seek compensation from the City of New York for injuries suffered while executing his duties as a Fire Prevention Inspector and Peace Office; the seizure and beating of Plaintiff.

102.   The City of New York acting through their agents, NYPD and FDNY Defendants determined Defendant was acting under color of law within the scope of his duties, at the time that incidents complained, when Plaintiff was charged with Obstructing Governmental Administration, PL195.05.

103.   On September 25, 2013, in Part AP6, the charges against Plaintiff were dismissed on motion of the Kings County District Attorney's Office.

104.   On October 12, 2013 Plaintiff went to the 79th Precinct in order to make and have filed a criminal complaint against Defendant Monk.

105.   Plaintiff explained the matter to intake officer, P.O. Kaufman, who began to write up the complaint.

106.    Plaintiff offered P.O. Kaufman a copy of the video of the assault by Defendant Monk, video stills from said video and Plaintiff's medical records.

107.   Soon thereafter, Officer Kaufman excused himself and went to a non-public area of the precinct.

108.   Minutes later Officer Kaufman returned and informed Plaintiff that he would not take Plaintiff's complaint.

109.   Sergeant Baronette immediately thereafter approached and stated that he would not allow a complaint to taken.

110.   Sergeant Baronette stated that he had been directed by Sergeant/Lt. Singh not to accept a complaint from Plaintiff.

111.   Because of continued revelations, including those of then police office Adrian Schoolcraft, on January 17, 2012 Police Commissioner Kelly issued a Departmental Order directing police officers to take complaints from crime victims.

112.   "The Report of the Crime Reporting Review Committee to Commissioner Raymond W. Kelly Concerning Compstat Auditing" dated April 8th, 2013, reviewed the manipulation of crime statics by NYPD. The Committee found that there was a systemic problem relating to the accuracy of police statics. One method used to manipulate crime statics was to suppress the filing of complaints. The Committee found that:

> Suppression is the failure to take a complaint report or preventing a complainant from filing one. …Press reports have described instances of each, and the Committee has heard anecdotal evidence of each as well. (Page 17).

113.   The manipulation of crime reports by refusing to take complaints from crime victims was so ingrained in the NYPD that it may very well be considered a policy of the City of New York.

## FIRST CLAIM FOR RELIEF

### (Against DEFENDANT ERIC MONK)

### 42 USC § 1983 UNREASONABLE AND EXCESSIVE FORCE

114.   Paragraphs 1 through 113 are incorporated by reference as though fully set forth herein.

115.   Defendant Monk did intentionally strike Plaintiff.

116.   Defendant Monk's striking of Plaintiff involved the use of excessive physical force and caused or exacerbated serious injuries to Plaintiff.

117.   Plaintiff did not consent to the excessive physical contact by Defendant Monk and Monk lacked legal justification, excuse or privilege for his conduct.

118.   By virtue of the foregoing, Defendant Monk deprived Plaintiff his rights under the Fourth and Fourteenth Amendment to the United States Constitution not be seized, assaulted and to be free from excessive and unreasonable force.

119.   Defendant Monk deprived Plaintiff of his rights intentionally, knowingly, willfully or recklessly, under color of law.

120.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein before alleged hereto.

121.   The acts of defendants as set forth above were intentional, wanton, malicious, and oppressive, thus entitling plaintiff to an award of punitive damages.


## SECOND CLAIM FOR RELIEF

### (Against ALL DEFENDANTS EXCEPT CITY OF NEW YORK)

### 42 USC § 1983 FALSE ARREST

122.   Paragraphs 1 through 121 are incorporated by reference as though fully set forth herein.

123.   Defendants, acting individually and in concert, and under color of law, deprived Plaintiff of his rights guaranteed under the Fourth and Fourteenth Amendment to the United States Constitution to be free from unreasonable search and seizure and to his liberty by searching, arresting, causing the confinement, and/or continuing the conferment of Plaintiff without any privilege whatsoever.

124.   Plaintiff was conscious of his confinement.

125.   Plaintiff did not consent to his confinement.

126.   Defendants each deprived Plaintiff of his rights intentionally, knowingly, willfully or recklessly, under color of law.

127.   As a direct and proximate result of this unlawful conduct, Plaintiff sustained the damages herein alleged.

128.   The acts of defendants as set forth above were intentional, wanton, malicious, and oppressive, thus entitling plaintiff to an award of punitive damages.

## THIRD CLAIM FOR RELIEF

(Against ALL DEFENDANTS EXCEPT CITY OF NEW YORK)

### 42 USC § 1985(3) CONSPIRACY

129.   Paragraphs 1 through 128 are incorporated by reference as though fully set forth herein.

130.   The individual defendants conspired with each other for the purpose of hindering and preventing authorities of the State of New York from securing and providing Plaintiff Alkaifi Equal Protection of Laws guaranteed by the Fourteenth Amendment of the Constitution. In furtherance of the conspiracy, and to conceal the crimes and misconduct of defendant Monk, all defendants, with the exception of the defendant City engaged in a cover-up.

131.   In furtherance of the conspiracy and in order to cover up acts of brutality, Defendants engaged in the following:

a.   Making false statements made to the Kings County District Attorney's Office, a wholesale abdication of defendants' legal duty to report evidence of criminal conduct to proper authorities.

b.   Willfully failed to collect exculpatory evidence and send exculpatory evidence to Kings County District Attorney's Office.

c.   Defendant Monk using a racial epithet against Plaintiff (see paragraph 60) during the course of the assault.

d.   NYPD arrest paper work listing Plaintiff as NOT a citizen of the United States, when Plaintiff is a citizen of the United States.

e.   NYPD arrest paper work stating Plaintiff does NOT speak the English language, when Plaintiff does fluently speak, read and write the English language.

132.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein before alleged hereto.

133.   The acts of defendants as set forth above were intentional, wanton, malicious, and oppressive, thus entitling plaintiff to an award of punitive damages.


**FOURTH CLAIM FOR RELIEF**

(Against ALL DEFENDANTS EXCEPT CITY OF NEW YORK)

**42 USC § 1983 CONSPIRACY**

134.   Paragraphs 1 through 133 are incorporated by reference as though fully set forth herein.

135.   Defendants Eric Monk; Police Officers Smithu, Police Officers Offices John and Jane Doe(s); Sergeant Baronette, Sgt./Lt. Singh, Lt. Kahn and Sgt. Sudes and Supervisory Police Offices John and Jane Roe(s), Defendant Franco and FDNY Supervisory Personnel John and Jane Jones(s), acting under color of law, conspired with one another to deprive Plaintiff Ali Alkaifi of his constitutional rights, including the right to be free from the intentional use of unreasonable force; unreasonable seizure; right to petition the government by filing a complaint as to Defendant Monk's criminal acts, the right to a fair trial; to be free from false arrest, false imprisonment, and malicious prosecution.

136.   Defendants Eric Monk; Police Officers Smithu, Police Officers Offices John and Jane Doe(s); Sergeant Baronette, Sgt./Lt. Singh, Lt. Kahn and Sgt. Sudes and Supervisory Police Offices John and Jane Roe(s), Defendant Franco and FDNY Supervisory Personnel John and Jane Jones(s), acted under pretense and color of law in their individual and official capacity. The acts of Defendants were without authority of law and in abuse of their powers, and defendants acted intentionally, willfully, knowingly and with specific intent to deprive Plaintiff of his constitutional

rights secured by the First, Fourth, Fifth, Sixth and the Fourteenth Amendment to the United States Constitution.

137.    Defendant Monk, in his capacity as a Fire Prevention Inspector and Peace Officer, without probable cause, did seize Plaintiff.

138.    Defendant Monk, in his capacity as a Fire Prevention Inspector and Peace Officer, without probable cause, did act with excessive force by physically battering the Plaintiff.

139.    Defendants conspired in order to cover up acts of Defendant Monk's acts of brutality -- Defendants engaged in the following:

   a.  Falsely arresting and imprisoning Mr. Alkaifi.

   b.  Fabricating and contriving the criminal charges filed against Mr.Alkaifi.

   c.  While on notice of exculpatory evidence, willfully failing to collect exculpatory and therefore fail to provide said evidence to the Kings County District Attorney's Office.

   d.  Defendant Monk falsely executed an affidavit in order to have criminal charges filed against Mr. Alkaifi.

   e.  Police Officer Smithu did falsely executed an affidavit in order to have criminal charges filed against Mr. Alkaifi.

   f.  All defendants' submitted false reports, statements to support and corroborate the fabricated charges filed against Mr. Alkaifi and to insulate Defendant Monk from administrative and criminal sanctions.

   g.  Defendants willfully did not record Plaintiff's statements.

   h.  Defendants Eric Monk, Police Officers Smithu, Police Officers JOHN/JANE DOE(s), NYPD Supervisors Sergeant Baronette, Sgt./Lt. Sing, Sgt. Sudes, Lt. Kahn, IAB, Supervisory Police Offices JOHN /JANE ROE(s) and JOHN/JANE JONES(s), Defendant Franco,

supervisory personnel of the New York City Fire Department, and Ambulance #1 and Ambulance #2 did devise a false exculpatory version of the events of July 8th, 2013 to insulate Defendant Monk from administrative and criminal sanctions.

i.   Police Officer Smithu did intentionally omit to file an "Aided Report" detailing the injuries to Mr. Alkaifi caused by Defendant Monk.

j.   Ambulances Nos. 1 and 2 failed to file the legally required PreHospital Care Report.

k.   Police Officer Smithu did intentionally describe Mr. Alkaifi's physical condition as "apparently normal" on the NYPD" Omniform System" Arrest Report to insulate Defendant Monk from administrative and criminal sanctions.

l.   All Defendants fabricated and contrived allegations that Plaintiff Alkaifi menaced and obstructed Defendant Monk.

m.  All Defendants fabricated and contrived allegations that Plaintiff Alkaifi had not been struck and brutally battered by Defendant Monk.

n.   On October 12, 2013 Sgt. Baronette relying on the directive of Sgt./Lt. Singh at the 79th precinct station house directed a NYPD Officer Kaufman to discontinue assisting Mr. Alkaifi from filing a complaint and ordering that Mr. Alkaifi should not be allowed to file a complaint against Defendant Monk to insulate Defendant Monk from administrative and criminal sanctions.

140.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein before alleged.

141.   The acts of all defendants as set forth above were intentional, wanton, malicious, and oppressive, thus entitling plaintiff to an award of punitive damages.

## FIFTH CLAIM FOR RELIEF

(Against ALL DEFENDANTS EXCEPT CITY OF NEW YORK)

### 42 USC § 1983 RIGHT TO PETITION

142.    Paragraphs 1 through 141 are incorporated by reference as though fully set forth herein.

143.    Defendants Eric Monk; Police Officers Smithu, Police Officers Offices John and Jane

Doe(s); Sergeant Baronette, Sgt./Lt. Singh, and Sgt. Sudes, Lt. Kahn and Supervisory Police

Offices John and Jane Roe(s) and FDNY Supervisory Personnel, Defendant Franco, John and Jane

Jones(s), acted under pretense and color of law in their individual and official capacity violated

plaintiff's rights as guaranteed by the First and Fourteenth Amendment to the United States

Constitution by denying him his right to exercise his First Amendment Right to petition government

by filing a criminal complaint against Defendant Eric Monk.

144.    The direct and proximate unlawful, malicious conduct in denying Plaintiff's right to file a

complaint was the result of a cover up designed to conceal the brutal beating of Plaintiff by

Defendant Monk.

145.    As a direct and proximate result of the misconduct and abuse of authority detailed above,

plaintiff sustained the damages herein before alleged.

146.    The acts of all defendants as set forth above were intentional, wanton, malicious, and

oppressive, thus entitling plaintiff to an award of punitive damages.

## SIXTH CLAIM FOR RELIEF

(Against ALL DEFENDANTS EXCEPT CITY OF NEW YORK)

### 42 USC § 1983 RETALIATION FOR SPEECH

147.   Paragraphs 1 through 146 are incorporated by reference as though fully set forth herein.

148.   Defendants Eric Monk; Police Officers Smithu, Police Officers Offices John and Jane Doe(s); Sergeant Baronette, Sgt./Lt. Singh, and Sgt. Sudes, Lt. Kahn and Supervisory Police Offices John and Jane Roe(s) and FDNY Supervisory Personnel, Defendant Franco, John and Jane Jones(s) violated plaintiff's rights as guaranteed by the First and Fourteenth Amendment to the United States Constitution by having plaintiff Alkaifi arrested without probable cause in retaliation for his protected speech in complaining to individual defendants about defendant Monk's attack.

149.   Plaintiff's arrest was a cover-up motivated by retaliatory animus.

150.   As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff sustained the damages herein before alleged.

151.   The acts of all defendants as set forth above were intentional, wanton, malicious, and oppressive, thus entitling plaintiff to an award of punitive damages.


## SEVENTH CLAIM FOR RELIEF

(Against DEFENDANT CITY OF NEW YORK)

### 42 USC § 1983 DELIBERTIVE INDIFFERENCE

152.   Plaintiff repeats and re-alleges paragraphs 1 through 151 as if the same were fully set forth at length herein.

22

153.   Upon information and belief the acts complained of by Plaintiff herein are a direct and proximate result of Defendant New York City's tacit authorization of and the gross indifference to the pattern of unconstitutional conduct by Defendants and that Defendant New York City's knowing failure to properly train, supervise and discipline Defendant police officers and supervisory personnel, FDNY personnel and fire department supervisors and Defendant Eric Monk.

154.   New York City police officers and peace officers are authorized to make arrests without an arrest warrant but only based on probable cause.

155.   New York City police officers and peace officers make thousands of warrantless arrests per year.

156.   New York City police officers and peace officers make arrests under difficult field conditions and frequently without the benefit of detailed investigation.

157.   New York City police officers and police supervisors were not trained in the legal authority of FDNY fire prevention inspectors' permissible use of force during the course of a range-hood inspection.

158.   Defendant City of New York knew, or should have known, that as a direct result of this policy, practice and/or custom, the constitutional rights of plaintiff Alkaifi would be violated.

159.   At all times relevant hereto Defendant City of New York was acting under color of state law when it implemented a policy, custom or practice of failing to adequately train its employees in the constitutional requirements in the execution of administrative inspections.

160.   By reason of the foregoing, defendant New York City has engaged in policies, practices and customs that, through the acts of defendant police officers and police supervisors, fire department supervisors and Defendant Eric Monk and in furtherance thereof, has deprived Plaintiff of rights,

remedies, privileges and immunities guaranteed to every citizen of the United States by the First,

Fourth, Fifth and Fourteenth Amendment to the United States Constitution.

161.   Those policies, practice and customs include, inter alia:

    a.  The failure to properly screen, supervise, discipline, transfer, counsel, or otherwise control

        New York City Fire Prevention Inspector and Peace Officer Monk from engaging in the use

        of physical violence;

    b.  The failure to properly educate, train, supervise, or otherwise counsel New York City Fire

        Prevention Inspector and Peace Officer Monk in how to interact and work the citizenry;

    c.  The police code of silence wherein police officers regularly cover up use of force, by

        employees of the City by failing to take complaints or by telling false and incomplete

        stories, inter alia, in testimony, official reports, and statements, all of which are designed to

        cover for and/or falsely exonerate New York City Fire Prevention Inspector/Peace Officer

        Monk;

    d.  Upon information and belief, New York City Police Department (NYPD) officers and

        personnel have falsely substantiated attempts to cover up illegal and unconstitutional actions

        with regard to the incident at issue;

    e.  Defendant City failed to properly to train police officers about the standards for probable

        cause for the warrantless seizure and arrest of individuals consistent with the requirements

        of the Fourth, Fifth and Fourteenth Amendments of the Constitution of the United States

162.   Said policy and practice of failing to properly educate, train, retrain, screen, discipline,

control supervise, transfer, and counsel, as well as the code of silence, were maintained and

implemented with deliberate indifference, and encouraged defendants to commit the unjustified

assault on plaintiff, and to cover it up, and therefore acted as a direct and proximate cause of the constitutional violations set forth above.

163.    As a direct and proximate result of the policies, practices and customs of defendant New York City alleged herein, plaintiff sustained damages herein before alleged.

164.    The acts of defendants as set forth above were intentional, wanton, malicious, and oppressive, thus entitling plaintiff to an award of punitive damages.

**EIGHTH CLAIM FOR RELIEF**

(Against ALL DEFENDANTS EXCEPT FOR CITY)

**42 USC § 1983 DENIAL OF DUE PROCESS and a FAIR TRIAL**

165.    Paragraphs 1 through 164 are incorporated by reference as though fully set forth herein.

166.    The Defendants willfully failed to collect and forward exculpatory evidence to prosecutors in the Kings County District Attorney's Office.

167.    The Defendants willfully failed memorialize Plaintiff's statements thus making them unavailable to prosecutors in the Kings County District Attorney's Office.

168.    The Defendants willfully did make and/or memorialize false, misleading and/or incomplete statements and offer said statements prosecutors in the Kings County District Attorney's Office.

169.    Defendants by their actions did cause Plaintiff to be arrested and prosecuted in violation of Plaintiff's Constitutional rights, pursuant to the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution, to due process of law and to a fair trial.

170.    As a direct and proximate result of the policies, practices and customs of defendant New York City alleged herein, Plaintiff sustained damages herein before alleged.

171.   The acts of defendants as set forth above were intentional, wanton, malicious, and oppressive, thus entitling plaintiff to an award of punitive damages.

# PENDANT CLAIMS

## NINTH CLAIM FOR RELIEF

(Against DEFENDANT MONK)

### ASSAULT AND BATTERY

172.   Paragraphs 1 through 171 are incorporated by reference as though fully set forth herein.

173.   By his actions as set forth above Defendant Monk committed atrocious acts of battery against Ali Alkiafi that includes choking, beating and kicking him in the face and body without cause. This use of physical force against Ali Alkiafi was unnecessary, excessive and without any justification or privilege.

174.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

175.   The acts of Defendant Monk as set forth above were intentional, wanton, malicious, and oppressive, thus entitling plaintiff to an award of punitive damages.

## TENTH CLAIM FOR RELIEF

(Against ALL DEFENDANTS)

### MALICIOUS PROSECUTION

176.    Paragraphs 1 through 175 are incorporated by reference as though fully set forth herein.

177.   Defendants, individually and in concert with, conspiring with, and/or aiding and abetting one another instituted the criminal proceedings against Plaintiff Alkaifi.

178.    Defendants instituted the criminal proceedings against plaintiff Alkaifi without probable cause to believe that Plaintiff Alkaifi committed the crimes charged.

179.    Defendants' objectives when instituting criminal proceedings against Plaintiff were outside the legitimate ends of the legal process, to wit, the cover up of the beating of Plaintiff.

180.    Defendants were acting with malice when they commenced the criminal proceeding against Plaintiff Alkaifi.

181.    The criminal proceeding against Plaintiff Alkaifi was terminated in Plaintiff Alkaifi's favor.

182.    Defendants were acting in the course and scope of their employment, acted under pretense and color of state law when they commenced a criminal proceeding Plaintiff Alkaifi.

183.    The acts of Defendants as set forth above were intentional, wanton, malicious, and oppressive, thus entitling plaintiff to an award of punitive damages

## ELEVENTH CLAIM FOR RELIEF

(Against ALL DEFENDANTS)

## FALSE ARREST AND FALSE IMPRISONMENT

184.    Paragraphs 1 through 183 are incorporated by reference as though fully set forth herein.

185.    Defendants, individually and in concert, arrested, caused the confinement, and/or continued the confinement of Plaintiff without any privilege whatsoever, with intent to confine, or cause the confinement of, Plaintiff.

186.    Plaintiff was conscious of the confinement.

187.    Plaintiff did not consent to the confinement.

188.    Plaintiff's confinement was not otherwise privileged.

189.    At all relevant times Defendants were employees of the City of New York and were acting

for, by and in furtherance of the business of their employers and within the scope of their

employment.

190.    As a direct and proximate result of the misconduct and abuse of authority stated above,

Plaintiff sustained the damages herein before alleged.

191.    The acts of Defendants as set forth above were intentional, wanton, malicious, and

oppressive, thus entitling plaintiff to an award of punitive damages

## TWELVTH CLAIM FOR RELIEF

(Against DEFENDANT CITY OF NEW YORK)

## NYPD: NEGLIGENT HIRING, TRAINING, RETENTION & SUPERVISION of EMPLOYMENT SERVICES

192.    Plaintiff repeats and re-alleges paragraphs 1 through 191 as if the same were fully set forth at

length herein.

193.    Defendant City, through the NYPD, owed a duty of care to Plaintiff to prevent the conduct

alleged, because under the same or similar circumstances a reasonable prudent and careful person

should have anticipated that injury to Plaintiff or those in a like situation would probably result from

the foregoing conduct.

194.    Defendant City's negligence in hiring, training, instruction, supervision, and discipline

proximately caused each of Plaintiff's injuries.

195.    As a direct and proximate result of the misconduct and abuse of authority detailed above,

Plaintiff sustained the damages herein alleged.

196.   The acts of Defendants as set forth above were intentional, wanton, malicious, and oppressive, thus entitling plaintiff to an award of punitive damages

## THIRTEENTH CLAIM FOR RELIEF

(Against DEFENDANT CITY OF NEW YORK)

## FDNY: NEGLIGENT HIRING, TRAINING, RETENTION & SUPERVISION of EMPLOYMENT SERVICES

197.   Plaintiff repeats and re-alleges paragraphs 1 through 196 as if the same were fully set forth at length herein.

198.   Defendant City, through the FDNY, was responsible for hiring, training, instruction, supervision, and discipline of FDNY Defendants who failed to prevent the conduct alleged, because under the same or similar circumstances a reasonable prudent and careful person should have anticipated that injury to Plaintiff or those in a like situation would probably result from the foregoing conduct.

199.   Defendant City's negligence in hiring, training, instruction, supervision, and discipline proximately caused each of Plaintiff's injuries.

200.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein before alleged.

201.    The acts of Defendant(s) as set forth above were intentional, wanton, malicious, and oppressive, thus entitling plaintiff to an award of punitive damages

## <u>FOURTEENTH CLAIM FOR RELIEF</u>

(Against DEFENDANT CITY OF NEW YORK)

### <u>RESPONDEAT SUPERIOR</u>

202.   Plaintiff repeats and re-alleges paragraphs 1 through 201 as if the same were fully set forth at length herein.

203.   At all relevant times, all defendants were employees of the City and were acting for, upon and/or in furtherance of the business of the City within the scope of their employment.

204.   The City is liable under the doctrine of respondent superior for their employees' actions.

205.   As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages herein before alleged.


**WHEREFORE,** plaintiff respectfully demands judgment and prays for the following relief, jointly and severally, against the defendants as follows:


1.   Full and fair compensatory damages in an amount to be determined by a jury;

2.   Exemplary and punitive damages in an amount to be determined by a jury;

3.   For cost of suit herein, including plaintiff's reasonable attorney's fees pursuant to 42 USC 1988;

4.   For such other and further relief as the court deems proper.


Dated: Queens, New York
      January 29, 2016


     /S/
_____
Micah. Kwasnik, Esq. (mk5150)
Attorney for Plaintiff
33-39 80th Street #22
Jackson Heights, NY 11372
Tel. 917 533-6822
Fax 347 738-5502
micahkwasnik@yahoo.com

Certificate of Service

I hereby certify that on January 29, 2016 the foregoing document was filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, and/or the Eastern District's Local Rules, and/or the Eastern District's Rules on Electronic Service upon the following parties and participants:

SERVICE VIA ECF:     Noreen Stackhouse, Esq.
                     Special Hagan, Esq.

                                        /s/
                     _____
                     Micah. Kwasnik, Esq. (mk5150)